IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NUMBER: |
| | ) | 3:06-cv-742-MEF |
| ROANOKE CITY BOARD OF | ) | |
| EDUCATION, | ) | |
| | ) | |
| Defendant. | | |

**ROANOKE CITY BOARD OF EDUCATION'S
RESPONSE  TO PLAINTIFF'S REPLY TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Roanoke City Board of Education respectfully moves the Court for entry of judgment as a matter of law.

PRELIMINARY STATEMENT

Plaintiff asserts vicarious liability for the alleged sexual harassment by a part-time crossing guard employee.  Plaintiff is also a part-time crossing guard.

Plaintiff had formerly served the system as a full-time custodian.  As a full-time custodian, she attended the District's Sexual Harassment program where the District's anti-sexual harassment policy was discussed.  Having attended that sexual harassment program, Plaintiff knew to report a sexual harassment complaint

to her supervisor. In 1998, she reported a sexual harassment complaint to her supervisor and it was effectively addressed.

In this case, Plaintiff admits she never brought her complaint to the attention of a supervisor prior to filing an EEOC complaint. Moreover, the fact is undisputed that no supervisor had actual or constructive knowledge of the alleged harassment. The fact is also undisputed that the alleged harassment was addressed immediately after the complaint came to the attention of the District's supervisors.

Plaintiff filed her EEOC complaint on September 23, 2005. Plaintiff consulted an attorney in August of 2005. At no time between August of 2005 and September 23, 2005 did Plaintiff contact a supervisor to ask that her complaint be addressed. At no time between August of 2005 and September 23, 2005 did she ask anyone for a copy of the District's sexual harassment policy. She did ask several people for copies of the full District Policy Manual which was being revised. She did not ask for the pertinent policy; nor did she ask any of the several people she talked to about registering her complaint for redress.

The record suggests – as school secretary Rosemarie Marshall stated in her affidavit (Ex. 12) (attached hereto as Appendix A) – that Plaintiff skirted a solution in order to position herself to seek monetary damages.

This suggestion is reinforced by the fact that Plaintiff did nothing for two years – took no steps to have the situation remedied – but did compile notes in anticipation of a claim.

The Board policy asks employees to make timely complaints so that the District can respond.  Each time Plaintiff did so the District responded in a thorough and expedited basis.

Plaintiff asks the Court to exempt her from doing the obvious:  reporting her complaint to her principal or female assistant principal.  Plaintiff asks the Court to exempt her from doing so in 2003, in 2004, and in 2005 prior to September 23, 2005 when Price filed her EEOC complaint.  Plaintiff asks the Court to exempt her even though she was in the small central office of Handley Middle School virtually every day where her principal and assistant principal worked.  In August of 2005 after consulting an attorney she claims she had problems obtaining a copy of the District's policy manual.  Plaintiff offers no explanation why she did not ask her principal or assistant principal at her school for one of the several policy manuals kept at Handley Middle School; nor why she did not discuss her complaint with her female assistant principal about whom she said:

> Q.    With what frequency did you see the assistant principal at the school?
>
> A.    It depends on if I subbed or not.  If I subbed, I saw her on a daily basis.  If I did not, I may not see her but once or twice a week.

Q.     And the assistant principal is a female?

A.     Yes.

Q.     All right. Are you comfortable talking to the assistant principal about the matters that were happening between you and Mr. Cottle?

A.     Yes.

Q.     All right.  And you would see this person with – the assistant principal with considerable regularity?

A.     Yes.

Q.     But you never mentioned these matters to the principal in 2003, 2004, 2005; is that correct?

A.     Well, a couple of the years before that, it was not a female –

Q.     Right. But during the time the female was there, you never mentioned these matters to her, did you?

A.     Not directly.  I just assumed she had heard it when she was in the other office.

Q.     All right.  You assumed, but you never asked her about it?

A.     No.

Q.     And you never asked the secretary if she had reported it to the principal or the assistant principal?

A.     No, I did not ask her that.

(Ex. 2, Price Depo. 32-34)


Defendant asks the Court to enter judgment for Defendant as a matter of law based

on the undisputed facts:  as soon as the alleged harassment was brought to the

attention of the District it was effectively addressed. Given this response, Defendant School District should have no vicarious liability for what it had no prior knowledge about.

### A.  DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

1.    Disputed.    The Board's policy manual is widely distributed for reasonable employee access:  in the school library; in the principal's offices; and at the central office.  (Ex. 3[1], Marcum Depo. 66, 69)  There are at least eight copies of the Board's policy manual in the schools and the central office.  (Ex. 3, Marcum Depo. 70)  Principal Foster kept two or three copies of the policy manual in his office at Handley Middle School where Plaintiff worked.  (Ex. 4, Foster Depo. 11)

As a part-time crossing guard employee, Plaintiff works from 7 a.m. until 8 a.m. directing traffic and from 2:30 p.m. to 3:30 p.m. (Ex. 2, Price Depo. 11-12) When Plaintiff worked as a full-time employee she attended the District's Sexual Harassment program where the Board policy was discussed..  (Ex. 2, Price Depo. 22; Ex. 3, Marcum Depo. 94)

2.    Disputed.  The Board's sexual harassment policy states:

Any employee who feels he/she has been sexually harassed by another employee(s) or student(s) of the School District should present the complaint directly to the School District Title IX Coordinator or a person designated by the Superintendent.

---

[1] The exhibit references are to Defendant's Evidentiary Submission filed contemporaneously with Defendant's Motion for Summary Judgment.  Defendant will not re-file the exhibits.

> The complaint should be filed as soon as possible after the incident or the latest occurrence if a series of incidents are involved.
>
> The employee should submit the report no later than forty-five (45) calendar days following the incident of the latest occurrence in the series of such incidents.

(Emphasis supplied.)

Plaintiff attended the District's Sexual Harassment program in 1998 where the procedure was explained.  (Ex. 3, Marcum Depo. 94)

Greg Foster, Principal, and Robbie Benefield, Assistant Principal, were Plaintiff's supervisors.  (Ex. 3, Marcum Depo. 56, 85, 87, 92, 98)

Each employee who testified through depositions knew to report to their supervisor any sexual harassment complaint. (Ex. 16, Clarke Depo. 10; Ex. 7, Cottle Depo. 12; Ex. 20, Yarbrough Depo. 14; Ex. 12, Marshall Depo. 18; Ex. 17, Hunter Depo. 24; Ex. 18, Harmon Depo. 9; Ex. 19, Pollard Depo. 12; Ex. 5, Benefield Depo. 9)

3.      Denied.  Every employee knew that they should report harassment to their supervisor.  See answer 2, above.

## B.  DEFENDANT'S REPLY TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS

4.      Admitted in part; disputed in part.  Admit that this is Plaintiff's contention.  Disputed. (Ex. 7, Cottle Depo. 10-14)

5.      Admitted in part; disputed in part.  Admit that this is Plaintiff's contention.  Disputed.  (Ex. 7, Cottle Depo. 10-14)

6.      Admitted in part; disputed in part.  Admit that this is Plaintiff's contention.  Disputed.  (Ex. 7, Cottle Depo. 10-14)  Furthermore, Price made no complaint to any supervisor concerning complaints about Cottle in 2003-2004. Price inquired about the full policy manual of the Board in August of 2005, just before filing her complaint with the EEOC.  (Ex. 2, Price Depo. 32, 45, 46)

7.      Admitted in part; disputed in part.  Admit that this is Plaintiff's contention.  Disputed.  (Ex. 7, Cottle Depo. 10-14)

8.      Admitted in part; disputed in part.  Admit that this is Plaintiff's contention.  Disputed.  (Ex. 7, Cottle Depo. 10-14)

9.      Disputed.  (Ex. 2, Price Depo. 121, 127, 129)

10.     Admitted in part; disputed in part.  Admit that this is Plaintiff's contention.  Disputed.  (Ex. 7, Cottle Depo. 10-14)

11.     Admitted in part; disputed in part.  Admit that this is Plaintiff's contention.  Disputed.  (Ex. 7, Cottle Depo. 10-14)

12.     Admitted in part; disputed in part.  Admit that this is Plaintiff's contention.  Disputed.  (Ex. 7, Cottle Depo. 10-14)

13.     Admit that this is Plaintiff's contention.  Denied that this contention was seen or known by Defendant employees.

14.    Admit that this is Plaintiff's contention.  Denied that this contention was seen or known by Defendant employees.

15.    Admit that this is Plaintiff's contention. Denied that this contention was seen or known by Defendant employees.

16.    Admit that Plaintiff asserted this fact.

17.    Admit that Plaintiff asserted this fact.

18.    Admit that Plaintiff asserted this fact.

19.    Admit that Plaintiff asserted this fact.

20.    Admit that Plaintiff asserted this fact.

21.    Admit that Plaintiff asserted this fact.

22.    Admit that Plaintiff asserted this fact.

23.    Admit that Plaintiff asserted this fact.  Plaintiff attended the School District's Sexual Harassment seminar in 1998 when she was a full-time employee. Plaintiff knew to report complaints to her supervisor and did so.  (Ex. 2, Price Depo. 22, 30)

24.    Admitted in part; disputed in part.  See answer to 23, above.

25.    Admit as Plaintiff's contention.

26.    Admit as Plaintiff's contention.  Disputed in part.  Plaintiff knew from attending the Sexual Harassment seminar in 1998 to report complaints to her

supervisor.  Plaintiff reported a complaint in 1998 to her supervisor.  It was immediately corrected.  (Ex. 2, Price Depo. 22, 30)

27.    Disputed.  Plaintiff knew how to report a complaint in 1998.  Plaintiff reported a complaint in 1998 to her supervisor.  The problem was corrected.  (Ex. 2, Price Depo. 22, 30)

28.    Admit as Plaintiff's contention.  Denied based on Plaintiff's action in 1998 where she knew to report a complaint to her supervisor and she did in fact make a complaint to her supervisor.  (Ex. 2, Price Depo. 22, 30)

29.    Admit as Plaintiff's contention.  Disputed in part.  Plaintiff did not complain during the 2003-2004 school year about Cottle's conduct occurring during that year; nor did Price complain in 2004-2005 about Cottle's conduct during that year.  Nor did Price seek copies of the Board's policy manual during 2003-2004, 2004-2005.  Price did not seek copies of the policy manual during those two years about which she now complains.  Plaintiff made no complaint to any supervisor in 2003-2004 or 2004-2005 as she had done in 1998.

Plaintiff in August 2005 – just before filing her EEOC complaint[2] – asked to see a copy of the District's Policy Manual.  Price did not ask for a copy of the sexual harassment policy.  She asked about the District's policy manual.  (Ex. 15, Martin Aff. 1)

---

[2] Plaintiff talked to her attorney about her complaints in August 2005.  Price then asked about the Board policy manual.  (Ex. 2, Price Depo. 46, 59)

30.    Admitted in part.   Plaintiff asked for the Board policy manual. Plaintiff did not ask specifically for the sexual harassment policy.  (Ex. 2, Price Depo. 119)  Plaintiff did not ask her principal to see the copy at her school.  (Ex. 2, Price Depo. 45-47)  Price had a copy of the Student Handbook and had seen the sexual harassment policy in that.  (Ex. 2, Price Depo. 120)

Plaintiff did not inquire in 2003-2004 or 2004-2005 about the policy. Plaintiff kept notes about Cottle.  (Ex. 2, Price Depo. 20)  Plaintiff did not bring these matters to the attention of a supervisor in 2003 or 2004 or the spring of 2005. (Ex. 2, Price Depo. 45, 47)

<u>RESPONSE TO ARGUMENT</u>

Plaintiff Price admits that the Defendant Board took immediate action to address her current problem as soon as it was brought to the attention of her supervisor.  (Ex. 2, Price Depo. 124)

Plaintiff Price admits that in 1998 that the Board took effective action to address her complaint when she reported her complaint to her supervisor.

Plaintiff admits that she knew to bring any complaint of sexual harassment to her supervisor in 1998.

Plaintiff claims that in August 2005, she did not know who her supervisor was and so did not complain to any administrator.

## DEFENDANT'S POSITION

Defendant asks the Court to review the totality of circumstances in assessing whether Plaintiff acted reasonably.

First, Plaintiff knew in the past to report her complaint to a supervisor. She did and it was taken care of.

Second, Plaintiff asks the Court to accept an "Emperor's New Clothes" argument.[3]  Plaintiff worked in a small middle school. She was in the school's central office almost on a daily basis.  The school has a principal and female assistant principal who were in the small central office on a daily basis, making decisions, talking to employees, students and others.

Plaintiff would like the Court to assume that she worked at the United States Pentagon along with thousands and thousands of employees and hundreds and thousands of ranking supervisors.  With such a maze as the Pentagon, Plaintiff's argument – did not know her supervisor – might have some credibility.

At Handley Middle School, it does not.

To argue to this Court that she did not know the supervisor at her school is absurd.

Plaintiff saw her supervisors every day – or almost every day.

---

[3] The Emperor's clothes were not new, but the assertions were offered nonetheless to the naïve emperor.  Plaintiff asks the Court to believe the incredible:  that she did not know who were the administrative supervisors at her school.

Plaintiff admitted she was interviewed for her position of employment at the school by the principal.  (Ex. 2, Price Depo. 14.)

Plaintiff admitted she reported to the assistant principal.  (Ex. 2, Price Depo. 15)  The assistant principal Robbie Benefield is a female supervisor.

As the Court assesses whether Plaintiff gave the Board fair notice and an opportunity to respond, the Court will, hopefully, assess the specific context within which she worked:  the small school environment.

Plaintiff "constructs" technical arguments to exempt her from the responsibility to report her complaints to her employer so that her complaint could have been addressed and have been resolved in a timely manner – without claims of damages and attorney fees.

Plaintiff claims the harassment started in 2003.  That year -- 2003 -- was not too long after she attended a sexual harassment program; knew to report harassment to her supervisor; and did so with effective response.

Reporting her complaint in 1998 to a supervisor was not apparently satisfactory in one respect.  The problem was solved to be sure, but she could not claim damages, costs and fees.  With this lawsuit, Plaintiff tries to avoid that outcome.

Instead she admits she kept notes about what was happening.  (Ex. 2, Price Depo. 22)  She admits she tried to tape conversations.  (Ex. 2, Price Depo. 65-66)

Did she report what was happening in 2003?

No.

Did she report what was happening in 2004?

No.

In August of 2005, she did inquire about the full Board policy manual. During that summer, it was being revised. In August of 2005 she hired an attorney. (Ex. 2, Price Depo. 46) She asked at the central office for a copy of the full Board policy manual.

Did she ask, "Well, could I see the sexual harassment section of the manual?"

No.

Did she ask at her own school – the secretary, the assistant principal or principal – for the school copy of the Board policy?

No.

Defendant Board of Education asks whether the facts really show that Plaintiff has acted in good faith toward her employer – or merely constructed a clever case.

The law is clear that a Board can be liable for sexual harassment if it knows about sexual harassment and does nothing.

In this case, no supervisor knew about the alleged harassment. At best, a school secretary might have had some knowledge.[4] And Price admits she never asked the school secretary what she should do or whom to report. (Ex. 2, Price Depo. 41)

Not knowing anything about the contentions, Defendant could not react in 2003 to eliminate any problem; or in 2004; or in the spring of 2005.

By working over time to "put together" a case, Plaintiff disserved her employer and defaulted under her responsibility as a matter of law.

Defendant would emphasize one important assertion: When Plaintiff reported a problem in 1998, it stopped; when Plaintiff brought her complaint in 2005 to the attention of her supervisors, it stopped.

Defendant respectfully submits that the case law regarding peer sexual harassment clearly mandate an obligation on an employee to bring a sexual harassment complaint to the employer's attention to provide the employer the opportunity to address the problem before spending thousands of dollars on litigation costs.

<u>CASE LAW</u>

In *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), the United States Supreme Court stated that an employer may assert an affirmative defense if:

---

[4] The secretary Rosemary Marshall states unequivocally in her affidavit (Ex. 12) that Price is fabricating her contentions. (Ex. 12 is attached hereto as Appendix A.)

(a)    the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and

(b)    the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

In this case, Plaintiff knew and demonstrated her knowledge to report a sexual harassment complaint to her supervisor.  When she did, it was corrected. But Plaintiff chose not to bring her complaints about Cottle to her employer.  Instead she asks the Court to allow her to seek damages and costs against this small school system.

Plaintiff admits she did not give notice to a supervisor.  She essentially lied to the EEOC that her assistant principal knew about the allegations.  She said in her EEOC complaint:

> I have complained to teachers at the school, the secretary, the counselor, and the assistant principal about this but nothing has been done.

(Ex. 8, EEOC Complaint)

Now Plaintiff tells the Court that the assistant principal was in the general area of a conversation regarding Cottle:

Q.    Did you ever go to the assistant principal to complain?

A.     Not to her office, but she was standing in the general central area of the office and overheard comments.  She says she does not remember them, that she was standing there and heard them.

Q.     Well, do you have any reason to believe that she would not tell the truth?

A.     No, sir.

Q.     So if she says she didn't hear you make a complaint, would you accept that was true?

A.     I will accept that. She may not have heard it and I'm not saying she did.

Q.     So would it be true then prior to you filing the complaint, as far as you know, neither the principal of your school, nor the assistant principal had any knowledge of your problems with Mr. Cottle?

A.     That's safe to assume.

(Ex. 2, Price Depo. 28-29)

Q.   You indicate that you complained to the assistant principal.  Who was the assistant principal that you complained to?

A.   That was Robbie Benefield.  That was the comments being made in front of the office.  I assumed she heard.

Q.     All right.  Here you're telling the EEO that you went to the assistant principal and complained, that wouldn't be true, would it?

A.   Not a direct complaint.

Q.   You never went to the assistant principal with a direct complaint, did you?

A.   No.

Q.     She may have been in the vicinity when you were talking with other people, but that's the closest you came to sharing with the assistant principal your concern about Cottle; would that be right?

A.   Yes.

Q.   And you say, but nothing has been done.  Did you expect or ever ask the teachers to do something about Cottle?

A.   Not them personally, no.

Q.   Did you ever ask the school secretary to do something about Cottle?

A.   Not a direct -- no.

Q.   Did you ever ask the counselor in '03 to do something about Cottle?

A.   No.

Q.   Did you ever ask the assistant principal to do something about Cottle?

A.   No.

Q.   So you never asked them to do anything about Cottle?

A.   No.

Q.   But as soon as this was brought to the attention of the superintendent, principal, and assistant principal, they did something about it?

A.   Yes.

(Ex. 2, Price Depo. 106-108.)

In *Arnold v. Tuskegee University*, 212 Fed. Appx. 803, 218 Ed. L.R. 170, 176 (11th Cir. 2006), the Eleventh Circuit analyzed whether an employee met her burden to establish vicarious liability. In that case, the Court found that Plaintiff Arnold failed to take advantage of any preventive or corrective opportunities to avoid harm.

Arnold's situation was comparable to Price's situation in this case in that Arnold "had personal knowledge and prior successful utilization of Tuskegee's anti-harassment policy."

## CONCLUSION

Plaintiff admits that a complaint to her supervisor had effectively remedied a problem in the past.

Plaintiff asks the Court to exempt her from reporting her complaint in 2005 on the basis that she did not know for sure who to report her complaint to.

If the Court does exempt her from the responsibility to give her employer fair and reasonable notice, then she hopes she can collect damages, costs and fees against this small school district.

Defendant asks the Court to enter summary judgment in light of the undisputed fact that the alleged harassment stopped immediately after it was brought to the attention of the school supervisors.

Where there is no evidence of "flagrant insensitivity" or "deliberate indifference" to known facts of sexual harassment, Defendant Roanoke City Board of Education respectfully asks the Court to enter judgment for Defendant as a matter of law.

s/Donald B. Sweeney, Jr.
DONALD B. SWEENEY, JR.
(SWE002)

OF COUNSEL

Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

19

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Adam M. Porter, Esq.
2301 Morris Avenue, Suite 102
Birmingham, AL  35203

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

NONE

Respectfully submitted,

s/ Donald B. Sweeney, Jr.
Donald B. Sweeney, Jr. (ASB-3803-W77D)

# APPENDIX A

STATE OF ALABAMA )
RANDOLPH COUNTY )

## AFFIDAVIT OF
## ROSEMARIE MARSHALL

Before me, the undersigned Notary Public, in and for said county and said state, personally appeared Rosemarie Marshall, who being by me first duly sworn, deposes and says as follows:

My name is Rosemarie Marshall. I am an adult, over the age of 21 years of age and with no impediments, physical or otherwise, that would impair me from truthfully stating facts known to me.

I work at Handley Middle School. I am the secretary/bookkeeper. I have been in this position thirteen and a half years.

I would see and talk with Angela Price on most days – a daily basis. Her duty hours as a part-time crossing guard were 7:30 to 8:30 and 2:30 to 3:30. She would come to the office to talk after her morning and before her afternoon duty on most days.

Ms. Price never asked me about a policy manual and never asked me about the school's sexual harassment policy. She only asked for and received a student handbook. We keep the policy manual in Principal Foster's office and another copy in the library.

1

Ms. Price never asked me how she should report a problem with Mr. Cottle in any of our daily conversations.

I think Ms. Price is fabricating these charges to make money. I have known Ms. Price professionally since 1995 when she was a custodian. I knew her family and her problems with her husband cheating on her. Ms. Price's brother worked with my husband.

I do not think Ms. Price is treating Mr. Cottle right in making these complaints. No one else has had any problem with Mr. Cottle. I have never heard him say anything inappropriate. And Ms. Price initiated the dialogue with Mr. Cottle. She would walk up to his truck to talk. She would park next to his truck in the afternoon. And she would smile when she was talking about Mr. Cottle.

Ms. Price likes attention. She likes to think she is good looking.

I think she is fabricating these charges. Mr. Cottle is an older man with several health problems; 68 years or so. He is very friendly and likeable.

She claims it was sexual harassment for him to invite her to Florida. I want to say two things about that.

First, when Ms. Price told me that Mr. Cottle had invited her to Florida, she was not upset at all about it.

Second, Mr. Cottle asked me to go to Florida. But the invitation was a joke and entirely innocent. Mr. Cottle had to go to Florida to see his doctor every

2

couple of months. On one occasion when he told me he was going to Florida, I told him I was jealous that he was going to Florida and I was not.

Mr. Cottle told me to hop in and let's go.

This was all a joke. There was nothing to it.

Mr. Cottle was married and from all I know he has had a long and happy marriage.

As I said, I have known Ms. Price since she worked at our school as a custodian in the 1990's. In 1998 or so, she complained to her supervisor that a fellow employee was bothering her. While the employee apologized if he upset her by anything he did, he did not agree with her accusations. The supervisor looked into the complaint immediately and made the employee apologize. It stopped then and there.

But that episode makes it clear that Ms. Price knew and, in my opinion, knows that you report problems to your supervisor.

I cannot imagine any adult in the work place not knowing that. It is emphasized at our in-school seminars as well. In fact, I know she attended one of these seminars in which sexual harassment was discussed in detail. Ms. Price sat in front of me at the seminar.

In our school – a small school – the principal and assistant principal are always accessible. Mr. Foster, our principal, has an open door policy and he

3

means that. He welcomes employees to come to him. Since Ms. Price would come to the office almost daily, she had almost daily access to Mr. Foster if she wanted to complain about Mr. Cottle.

The same thing is true with Ms. Benefield, our assistant principal. Ms. Price would have access to Ms. Benefield if she wanted access whenever she came to the office.

Ms. Price is not shy. She talks to everyone. If I were asked if she has a shy bone in her body, I would say absolutely not.

Ms. Price would talk to the people in the office about anything on her mind. If she had asked any of us to complain for her to the principal or assistant principal, we would have done so.

In a small school, you have to work together and look after each other. Sexual harassment is not tolerated – not from students, not from adults. If Ms. Price had asked for help, it would have been there from any of us.

The fact that she did not report this to her supervisors when she knew to do so is why I think she is fabricating all this. I think she is fabricating that she did not know how to report a problem, and I think she is making up the allegations to fit her lawsuit. Just like the invitation to Florida.

4

_Rosemarie Marshall_

Rosemarie Marshall

Sworn to and subscribed before me this the 6th day of August 2007.

_Chris F. Martin_

Notary Public

My Commission expires: 6/20/2010

(Seal)

5