IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ANGELA PRICE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 3:06-cv-742-MEF |
| | ) |
| ROANOKE CITY BOARD OF | ) (WO) |
| EDUCATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Angela Price ("Price") brings this action against the Roanoke City Board of Education ("Roanoke" or "the Board"), alleging that she was sexually harassed while employed as a crossing guard at Handley Middle School ("Handley"), which is operated by the Board. Price claims that she was sexually harassed from 2003 to 2005 by Jerrell Cottle ("Cottle"), who also worked at Handley as a crossing guard, in violation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983. This cause is before the Court on Roanoke's Motion for Summary Judgment (Doc # 17). The Court has carefully considered all submissions in support of and in opposition to the motions and the relevant case law. For the reasons set forth below, the Court finds that Defendant's Motion for Summary Judgment is due to be DENIED.

**I. JURISDICTION AND VENUE**

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343(4) (civil rights). The parties contest neither

personal jurisdiction nor venue, and the Court finds an adequate factual basis for each.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the

nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### III.  FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the

light most favorable to the non-moving party, establish the following relevant facts:

 Price and Cottle were both employed as crossing guards at Handley. Price began her job as crossing guard beginning in the fall of 2002. Pursuant to their duties as crossing guards, Price and Cottle had daily interaction. Price complains that beginning in the 2002-2003 school year, Cottle made comments of a personal and sexual nature to her at work about once a week. These comments became more personal and more frequent beginning in the fall of 2003. From 2003 to the summer of 2005, Cottle made comments that were offensive to Price about four times per week. From August 2005 to October 2005, these comments became worse and occurred on a daily basis. The comments Cottle would make were that Price was pretty, that she had pretty legs, and he would ask to see her "pretty green eyes." Cottle told Price that he wished he had met her before her husband had. Cottle also routinely asked Price to go places with him—to Florida, to football games, to Cheaha Mountain, or to just go riding in the car together. Cottle also suggested to Price that they tell everyone that they had a school board meeting one night and drive to LaGrange, Georgia. On cold mornings, Cottle would put his hands on Price's cheeks. On one occasion in August 2005, Cottle told Price "You look good enough to eat this morning." Also, in the fall of 2005, Cottle touched Price on the cheek, shoulder, and hands, and he told her he was going to "plant one" there.

 Cottle made these remarks and touchings despite repeated rebukes by Price. When Cottle would touch him, she would push his hands away and tell him to stop. She also told

4

him that she did not like his comments. Cottle's behavior made Price not want to come to work. Price also changed her routine. Originally, Price would arrive at work fifteen minutes before her shift started, but Cottle would usually talk to her during this time before they had to go to their posts. Cottle's behavior caused Price to try to arrive at work just before her start time so that she could avoid any conversation with Cottle. This meant that she often had to rush to be at her post on time. After work, Cottle would try to talk to her and Price would hide in the school or in the women's room to avoid him.

Price was particularly concerned about not losing her job because her son was able to attend Handley, despite the fact that their family lived outside the county, solely because Price worked there. Price considered Handley to be superior to the school in her county, and if she lost her job, her son would not have been able to attend Handley any more.

Price attended a sexual harassment seminar in 1998, when she was employed as a custodian at Handley. In 1998, the school's sexual harassment policy required employees to report sexual harassment to their supervisor. This policy changed in 2000 to require employees to report sexual harassment to the school's Title IX coordinator. The newer policy was the policy in effect during the alleged harassment in this case. However, Price testified that she was never informed of the new sexual harassment policy, never received a copy of any sexual harassment policy, and that she did not know how to report sexual harassment. Handley held classes each year on sexual harassment. However, crossing guards were "welcome"—but not required—to attend these meetings, and Price did not

attend these meetings. Price considered Rosemarie Marshall ("Marshall"), the school's secretary, to be the person to whom she was expected to report problems. Price believed this because she reported to Marshall when she was sick or had an attendance problem. On one occasion, Price noticed that parents were dropping their children off at school in the teacher's parking lot, which they were not supposed to do. Price reported this to Marshall, and soon after the school solved the problem by installing a chain across the parking lot. Price also reported problems with her pay check to Marshall and those problems were corrected. There was no one at the school that Price reported anything to except Marshall, except in circumstances when Marshall could not be reached.

Price began to report Cottle's behavior to Marshall in the fall of 2003. Price continued to tell Marshall about Cottle's behavior through the fall of 2005. One day in the spring of 2005, Price complained (presumably to Marshall, though the record is unclear on this point) about Cottle's conduct in the school's office while Assistant Principle Robbie Benefield was six to eight feet away. While admitting that she has no proof, Price asserts that Benefield must have heard her complaint. Benefield denies having heard the complaints. In August 2005, Price tried to seek out the school's sexual harassment policy. She asked the school's librarian for a copy of the policy, but their copy was not available. The librarian referred Price to the high school; however, the high school also informed Price that their copy was unavailable. Price contacted the Board's central office, which informed her that their copy was not available either.

On September 23, 2005, Price filed a sexual harassment complaint with the EEOC. In early October 2005, Price met with Chuck Marcum (Superintendent), Greg Foster (Principle), and Robbie Benefield (Assistant Principle) to discuss the EEOC complaint. At this meeting, the school officials indicated they had no prior knowledge of the sexual harassment. After this meeting, by Price's own admission, Cottle's allegedly harassing behavior ceased.

## IV. DISCUSSION

Price has brought sexual harassment charges under § 1983 as well as Title VII. This Court will analyze both claims together. *See Hardin v. Stynchcomb*, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982) (when § 1983 used as parallel remedy for Title VII violation, elements of the two causes of action are the same). To prove sexual harassment under Title VII, a plaintiff must show (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists. *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1244-45 (11th Cir. 2004). Roanoke does not dispute that the Plaintiff has established the first three elements. Therefore, this Court will address the latter two.

### A.    Sufficiently Severe or Pervasive

In order to establish that the harassment was sufficiently severe or pervasive to alter

the terms and conditions of employment, the plaintiff must prove either (1) that a refusal to submit to a supervisor's sexual demands resulted in a tangible employment action taken against them; or (2) that the harassment was sufficiently severe and pervasive to effectively result in a change in the terms and conditions of employment. *Hulsey*, 367 F.3d at 1245. There is no allegation in this case that a tangible employment action was taken against Price, and Cottle was not Price's supervisor. Thus, this Court need only address the second form of sexual harassment.

This form of harassment, known as "hostile work environment harassment," requires the harassment to be both objectively and subjectively offensive. In other words, to be actionable, the behavior must result in "both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (internal quotation marks and ellipses omitted).

There is no doubt, and the parties do not dispute, that Price subjectively perceived Cottle's behavior to be abusive. Therefore, the Court need only address the objective component. In assessing whether harassment was objectively offensive, courts typically look to: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening and humiliating or just a mere utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance. *Hulsey*, 367 F.3d at 1247-48 (11th Cir. 2004). These factors are to be considered in light of the totality of the

circumstances. *Id.* at 1248.

The Court finds that Price has presented sufficient evidence to create a genuine issue of material fact that a reasonable jury could find Cottle's behavior to be objectively offensive. In support of its claim that Cottle's behavior was not harassment, Roanoke cites *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571 (11th Cir. 2000), and *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999), both of which found that sexual harassment claims were not objectively severe or pervasive. This court finds that both *Gupta* and *Mendoza* are distinguishable from the facts of this case.

In *Gupta*, the plaintiff's supervisor told her on one occasion that she was "looking very beautiful;" he stared at the plaintiff twice, touched her ring and bracelet once, placed his hand on her knee once, touched the hem of her dress once, and kept asking her to lunch. However, the court in *Gupta* emphasized that these were isolated incidents. *Gupta*, 212 F.3d at 585-86. Indeed, the only conduct in *Gupta* that occurred with any frequency was that the supervisor would call the plaintiff at home, but he did not ask her on dates or make sexually explicit remarks.

In *Mendoza*, there was one instance where the supervisor told the plaintiff "I'm getting fired up"; one instance where the supervisor rubbed his hip against the plaintiff's hip while touching her shoulder and smiling; two instances in which the supervisor made a sniffing sound while looking at the plaintiff's groin area and one instance of sniffing without looking at her groin; and the supervisor "constant[ly]" followed and stared at the plaintiff.

*Mendoza*, 195 F.3d at 1247. Therefore, *Mendoza* also involved conduct that involved essentially isolated incidents. Furthermore, with respect to the frequent following and staring, the court in *Mendoza* noted that "the everyday observation of fellow employees in the workplace is also a natural and unavoidable occurrence." *Id.* at 1248.

In this case, viewing the evidence in the light most favorable to Price, Roanoke simply has not satisfied its burden of proving to this Court that no reasonable jury could find that Cottle's conduct was objectively severe and pervasive. The first factor in the objective test is the frequency of the conduct. Price has alleged that Cottle harassed her on a daily basis, which stands in stark contrast to the incidents involved in *Gupta* and *Mendoza* where the courts emphasized the isolated nature of the conduct. Therefore, the Court finds that this factor weighs in favor of Price. Additionally, the fourth factor, whether the conduct unreasonably interfered with job performance, does not weigh significantly in either direction. There is some evidence that Price's performance was affected, in that she tried to arrive at work just before the start of her shift to avoid Cottle. This caused her to have to rush to be at her post on time. However, there is no evidence that Price's actual crossing guard duties were affected, or that she was ever late to her post as a result of Cottle's conduct. Therefore, this factor does not affect the analysis in any significant way.

The second and third factors are the severity of the conduct and whether the conduct is physically threatening and humiliating. Price alleges that Cottle frequently commented on her appearance, making comments that she was pretty, had pretty legs, had pretty green eyes,

and "look[ed] good enough to eat." These comments are the types of compliments that the Eleventh Circuit found that a reasonable person would not find offensive. *See Gupta*, 212 F.3d at 584. However, *Gupta* involved *one* complement, "you are looking very beautiful," over the course of a *sixth month* time frame. This case involves a steady barrage of comments on a daily basis for several years. Furthermore, Price alleges that Cottle repeatedly touched her on the face, and would ask her out on dates despite repeated rebukes.

With respect to these factors, the Eleventh Circuit held in *Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000), that giving unwanted massages, standing so close to the plaintiff that the supervisor's body parts touched plaintiff from behind, and pulling his pants tight to reveal the imprint of his private area to the plaintiff met both the severe, and physically threatening and humiliating factors. On the spectrum of severity between *Gupta* and *Johnson*, this case lies somewhere in between. Were it not for high frequency of the alleged conduct in this case, this Court might very well find that Roanoke had met its burden. However, given that the conduct in this case is at least as severe as the conduct in *Gupta*, if not more so, and the high frequency of the offensive conduct distinguishes this case from *Gupta* and *Mendoza*, this Court finds that the Price has established a genuine issue of material fact on this issue.

**B.    The Basis of Employer Liability**

Roanoke further challenges Price's claim on the ground that Price failed to provide notice of the alleged sexual harassment. An employer can not be held vicariously liable for

11

the harassment of a co-worker unless the employer knew (actual notice) or should have known (constructive notice) of the harassment, and the employer failed to take remedial action. *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003).[1] Actual notice is established by proof that management knew of the harassment. *Id.* When an employer has a clear and published policy that outlines the procedures an employee must follow to report suspected harassment and the complaining employee follows those procedures, actual notice is established. *Id.* Constructive notice, on the other hand, is established when the harassment was so severe and pervasive that management reasonably should have known of it. The burden of proof is on the employee to prove actual or constructive notice. *Id.* at 1257. This Court finds that Price has presented sufficient evidence to create a genuine issue of material fact that Roanoke had actual notice of the harassment and failed to take remedial action.

Roanoke argues that Price's repeated complaints to the school's secretary Marshall about Cottle's behavior was insufficient to put it on actual notice of the alleged sexual harassment. Therefore, Roanoke claims it did not have actual notice of the alleged sexual harassment until October 2005 when Price filed her EEOC complaint. Because the school

---

[1] In *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), the Supreme Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." The Court also established that this vicarious liability for the harassment of a supervisor is subject to an affirmative defense, known as the "*Faragher-Ellerth*" defense. *See id.* In this case, Price was not harassed by a supervisor, therefore the principle of vicarious liability established in *Faragher* is inapplicable. Consequently, Roanoke can only be held vicariously liable for the harassment of Price if it meets the test articulated in *Watson*.

officials acted promptly to end the harassment after becoming aware of the behavior in October 2005, Roanoke argues it can not be held vicariously liable for Cottle's behavior.

Roanoke claims it was not put on notice because Price failed to follow the procedures in its sexual harassment policy. Interestingly, it does not point to the policy that was actually in place when the harassment was occurring during Price's employment as a crossing guard. That policy required an employee to notify the school's Title IX coordinator of any sexual harassment. Instead, it points to the policy that was in place when Price was working in her old job as a custodian. The old policy required an employee to notify a supervisor of any sexual harassment. Presumably, Roanoke is relying on the old policy because that is the only policy that Roanoke can prove was ever presented to Price.[2]

Roanoke argues that the notice Price provided to Marshall is inadequate because Marshall was not Price's "supervisor" within the meaning of the out of date sexual harassment policy provided to Price in 1998. Roanoke argues that, absent reporting the complaint to the school's Title IX coordinator, Price would have had to report to a school

---

[2] Roanoke has presented a sign-in sheet for a sexual harassment workshop in 1998 bearing Price's signature. In 1998, the old sexual harassment policy was in place. Roanoke changed its sexual harassment policy in 2000, and this new policy was in place when the alleged harassment occurred. No evidence has been presented to the Court that Price ever received the new policy, and Price has alleged in her affidavit that she was not aware of and never received the new policy. Moreover, Price testified that she made numerous failed attempts to obtain the new policy. Failure to follow a sexual harassment policy that has not been adequately disseminated does not bar a Title VII claim. *Cf. Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1286 (11th Cir. 2003) ("[D]issemination of an employer's anti-harassment policy is fundamental to meeting the requirement for exercising reasonable care in preventing sexual harassment.").

official such as the Principal or an Assistant Principal. However, there is a genuine issue of material fact regarding whether notice to Marshall is sufficient to hold Roanoke liable for Cottle's harassment. According to Price, the only sexual harassment policy she was ever given told her to report harassment to her "supervisor." Price has also testified that she was never informed who her "supervisor" was, and she always reported problems and attendance issues to Marshall. In addition, the school typically addressed problems that Price reported to Marshall, such as the problem of parents dropping their children off in the teacher's parking lot. Therefore, there is a genuine issue of material fact as to whether Price reasonably believed that Marshall was her supervisor, and whether reporting her complaints to Marshall was a reasonable attempt to take advantage of Roanoke's sexual harassment policy. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) (holding that a plaintiff's reasonable attempts to take advantage of employer's sexual harassment policy bars an employer's affirmative defense against vicarious liability).

Roanoke cites *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1365 (11th Cir. 1999), to support its claim. However, *Coates* is inapplicable to this case. In *Coates*, the court held that an employer was not put on notice of sexual harassment where the employee showed a company manager an inappropriate note she received, without clearly indicating to the manager that it was a problem about which she was concerned or that required immediate attention. *Id.* Unlike *Coates*, the issue here is not whether the information presented to the employer was sufficient to provide actual notice, but whether the person to whom it was

presented is adequate.[3]  Moreover,  Roanoke's citation to *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1300-01 (11th Cir. 2000), is misplaced for the same reason.

## V.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Defendant's Motion for Summary Judgment (Doc # 17) is DENIED.

DONE this the 26th day of October, 2007.

                          /s/ Mark E. Fuller
                          CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Price clearly put Marshall on notice that she wanted the harassment to end.  In both *Coates* and *Madray*, the employee failed to inform the employer that the incidents she was complaining about were more than just isolated incidents.  *See Coates*, 164 F.3d at 1365 (finding inadequate notice where complaint did not put manager on notice that incident "was only the latest in an ongoing pattern of sexually harassing behavior"); *Madray*, 208 F.3d at 1301 ("Knowledge of these two isolated incidents is not sufficient to . . . create a reasonable expectancy that he would take corrective action.").  Here, Price repeatedly complained to Marshall about Cottle's behavior over the course of two and a half years, yet no corrective action was taken.

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

(a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

(b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

(c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

(d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

(e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).